

GOVERNMENT
EXHIBIT
P4

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Report of Investigation**

| of Investigation:<br>_EARD, David Calvin | Investigation Number:<br>777020-17-0005 | Report Number:<br>10 |
|---|---|---|

## SUMMARY OF EVENT:

On ▆▆▆▆▆, 2017 ATF Special Agent ▆▆▆▆▆, acting in an undercover capacity, with ATF Confidential Informant #13739 met with Heather WRIGHT-BEARD as introduction/discussion of future gun and narcotics purchases. This meet was an introduction only and was not an attempt to purchase evidence.

## NARRATIVE:

1. On ▆▆▆▆, 2017 ATF S/A ▆▆▆▆ (UC) acting in an undercover capacity, with ATF CI #13739 met with Heather WRIGHT-BEARD. WRIGHT-BEARD, D.O.B 08/02/1978, is a multi-convicted felon who is known to closely associate with the local members of the Aryan Brotherhood. WRIGHT-BEARD is also known to be in possession of firearms and sell methamphetamine. This meet took place at ▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆. The following is a synopsis of the meeting that took place, in substance and in part.

2. At approximately 14:30 SAs Labrano and Robichaux met with the CI at a pre-determined location. CI was driven to the Jackson ATF office where members of the operational cover team were staged. UC was equipped with a police consensual listening/recording device and given $200.00 of pre-recorded US currency.

3. Prior to meeting with UC, CI contacted WRIGHT-BEARD and advised her that he/she (CI) would be stopping by ▆▆▆▆▆▆▆▆▆▆▆▆▆▆. At approximately 14:50 UC and CI drove to ▆▆▆▆▆▆▆▆.

4. Upon arrival, UC and CI knocked on the front door of ▆▆▆▆▆. WRIGHT –BEARD yelled from inside asking who it was. WRIGHT-BEARD then yelled through the closed door that CI would need to come back in about an hour. CI agreed, and UC and CI returned to the ATF Office to meet the cover team.

5. At approximately 16:00 UC and CI drove back to ▆▆▆▆▆▆▆▆. Upon answering the door, CI introduced UC to WRIGHT-BEARD. WRIGHT-BEARD invited UC and CI into ▆▆▆▆▆.

| Prepared by:<br>Brian A. Weaks | Title:<br>Special Agent, Shreveport Field Office | Signature: | Date: |
|---|---|---|---|
| Authorized by:<br>Clayton R. Merrill | Title:<br>Acting Resident Agent in Charge, Jackson Field Office | Signature: | Date: |
| _cond level reviewer (optional):<br>_nstance D. Hester | Title:<br>Special Agent in Charge, New Orleans Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only
USA000239

| Title of Investigation: | | Investigation Number: | Report Number: |
|---|---|---|---|
| BEARD, David Calvin | | 777( 17-0005 | 10 |

6. CI advised WRIGHT-BEARD that UC was looking for a new supplier of methamphetamine. WRIGHT-BEARD asked UC how much he (UC) was looking to buy and what kind of prices he (UC) use to paying. UC stated that he (UC) had been paying about $500-$600 for an ounce. WRIGHT-BEARD responded that she (WRIGHT-BEARD) paid about the same from her supplier. UC stated that he would normally purchase approximately 6-7 ounces a month and had no problem re-selling that amount. WRIGHT-BEARD stated that her normal dealer, (DIRK or DIRT, unintelligible) only got approximately 3-4 ounces at a time. WRIGHT-BEARD further stated that DIRK was cutting the meth that he (DIRK) sells and that it's not any good.

7. WRIGHT-BEARD stated that her (WRIGHT-BEARD'S) larger scale meth connection was an individual by the name of "Dennis" (no last name was given) that lived in Texas. WRIGHT-BEARD asked UC how much meth UC was looking to buy. UC advised WRIGHT-BEARD that he (UC) wanted seven (7) ounces. WIGHT-BEARD asked UC what she (WRIGHT-BEARD) would get out of the deal if she (WRIGHT-BEARD) introduced UC to "Dennis." UC asked WRIGHT-BEARD what she wanted. WRIGHT-BEARD stated that she (WRIGHT-BEARD) would do the introduction if UC would drive and pay all expenses to include one night in a hotel in Texas. WRIGHT-BEARD further stated that she wanted a ½ ounce out of the meth purchased as payment for the introduction. UC agreed to the terms that WRIGHT-BEARD wanted. At that point WRIGHT-BEARD attempted to contact "Dennis" via her cell phone. "Dennis" didn't answer so WRIGHT-BEARD left a message.

8. UC asked WRIGHT-BEARD if she (WRIGHT-BEARD) knew of anyone selling firearms on the street. WRIGHT-BEARD responded that DIRK sells guns, but he's not very open about it. CI asked WRIGHT-BEARD if K.C. was still selling guns. WRIGHT-BEARD stated yes, but that UC and CI need to be careful dealing with guns because the "Feds weren't messing around" when it comes to guns.

9. During the meeting with WRIGHT-BEARD, an unknown white male (W/M) came to the door. CI let W/M into ▓▓▓▓▓▓. W/M made small talk then walked to the back of ▓▓▓▓▓. A few minutes later W/M returned carrying a laundry basket full of folded clothes. W/M made small talk for a few more minutes, then exited ▓▓▓▓▓▓.

10. WRIGHT-BEARD stated that if she got arrested again that she would get life in prison, further stating that a district, other than Jackson MS, was holding a charge over her (WRIGHT-BEARD) head. WRIGHT-BEARD explained that an unidentified man made her (WRIGHT-BEARD) drive him to a residence where he broke in and stole 44 guns. She (WRIGHT-BEARD) stated that when she realized what the unidentified man was doing, she (WRIGHT-BEARD) threatened to leave him. The man told her (WRIGHT-BEARD) he would kill her (WRGHT-BEARD) so she stayed.

11. WRIGHT-BEARD asked UC if he wanted to buy a ▓▓▓▓▓▓. UC responded that he might be interested, and asked to see it. WRGHT-BEARD took UC and CI to the back ▓▓▓▓▓▓ and showed UC ▓▓▓▓▓▓ and numerous other items that were for sale. WRIGHT-BEARD stated that the majority of the items were stolen and traded to her (WRIGHT-BEARD) for meth.

12. WRIGHT-BEARD, UC and CI went back into ▓▓▓▓▓▓▓▓▓▓▓▓. Small talk was made, WRIGHT-BEARD confirmed with UC that he (UC) was interested in going to Texas to buy meth from Dennis, then UC and CI left ▓▓▓▓▓▓.

ATF EF 3120.2 (10-2004)
For Official Use Only
USA000240

| Title of Investigation:<br>BEARD, David Calvin | | Investigation Number:<br>7776  17-0005 | Report Number:<br>10 |
|---|---|---|---|

13. Other names mentioned during the conversation were "Little Rock" and "C.C." These names were mentioned in no particular context, through conversation only.

14. UC and CI returned to a pre-determined meeting location to meet the cover-team and conclude the operation.

15. The above transaction was video and audio recorded for evidentiary purposes. The equipment utilized during this operation failed and no evidence was gained.

## Personnel Present for Operation:

Case Agent Nick Robichaux – ATF
UC SA ███████ – ATF
SA Clayton Merrill – ATF
SA Blair Lobrano – ATF
SA Braden Theobald – ATF
SA Justin Hayes – ATF

SA Justin Hayes - ATF
SA Dale Stallings - ATF
SA Micah Snyder - ATF
SA Chuck Donohoe - ATF
Det. Rick Neely - HCSO

## Funds Expended for Evidence:

$.00

ATF EF 3120.2 (10-2004)<br>For Official Use Only<br>USA000241

EXHIBIT NO. P4 evid
CAUSE NO. 3.17co170-DPJ-FKB
WITNESS _____
CLERK: _____ SHONE POWELL

SEP 25 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

Gina Morris , REPORTER